IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| GREAT AMERICAN INSURANCE COMPANY and GREAT AMERICAN INSURANCE COMPANY OF NEW YORK, <br><br> Plaintiffs, <br><br> v. <br><br> RITTER, BOTKIN PRIME CONSTRUCTION COMPANY, INC.; RITTER BOTKIN HOLDINGS GP, LLC; RITTER BOTKIN HOLDINGS, LP; BRIAN RITTER; LAURA RITTER; FRANK D. BOTKIN; and DESHA BOTKIN, <br><br> Defendants. | § § § § § § § § § § § § § § § § § § | 1:21-CV-578-RP |

## ORDER

Before the Court is Plaintiffs Great American Insurance Company and Great American Insurance Company of New York's (collectively, "Plaintiffs") Motion for a Preliminary Injunction (the "Motion") filed July 26, 2021.[1] (Mot. Prelim. Inj., Dkt. 4). Defendants Frank D. Botkin; Desha Botkin; Brian Ritter; Laura Ritter; Ritter Botkin Holdings GP, LLC; Ritter Botkin Holdings, LP; and Ritter, Botkin Prime Construction Company, Inc. ("RBPC") (collectively, "Defendants") filed responsive briefing, (Dkt. 9), and the Court held a hearing on the Motion, (Prelim. Inj. Hr'g, Dkt. 18), on March 18, 2022. For the reasons discussed below, the Court will grant Plaintiffs' motion.

## I. BACKGROUND

This case arises out of an agreement to indemnify the surety on a government construction project. In 2015, RBPC entered an agreement with Williamson County, Texas ("WILCO") to serve

---

[1] The Motion was initially filed as a Motion for Temporary Restraining Order ("TRO"). (*See* Mot. Prelim. Inj., Dkt. 4). The Court denied the TRO the same day but allowed the instant preliminary injunction motion to proceed. (Order, Dkt. 6, at 2).

1

as general contractor for a park project in Liberty Hill, Texas, called River Ranch County Park Phase I Development (the "Project"). (Resp., Dkt. 9, at 2). Plaintiffs agreed to act as surety and provide the payment and performance bonds required for the Project, with RBPC as principal in favor of WILCO. (*Id.*). As part of the surety contract, Defendants entered into an indemnity agreement with Plaintiffs on January 1, 2015, and executed a rider on January 23, 2017 (collectively, the "Indemnity Agreement"). (Mot. Prelim. Inj., Dkt. 4, at 2).

The Indemnity Agreement requires that Defendants "jointly and severally, shall exonerate, indemnify, hold harmless and keep [Plaintiffs] indemnified from and against any and all liability for losses, costs, and/or expenses of whatsoever kind or nature . . . and from and against any and all such losses and/or expenses which [Plaintiffs] may sustain and incur." (Indemnity Agreement, Dkt. 4-2, at 2). It further holds that payment shall be made "upon demand by [Plaintiffs], as soon as liability exists or is asserted against [Plaintiffs], whether or not [Plaintiffs] shall have made any payment therefor. The amount of such payment . . . shall be determined by [Plaintiffs] and . . . may . . . be in addition to and not in lieu of or substitution for any other collateral that may have been previously deposited." (*Id.*). The Indemnity Agreement also includes Defendants' acknowledgement that "the failure of [Defendants] to deposit with [Plaintiffs], immediately upon demand, the sum demanded . . . as payment shall cause irreparable harm to [Defendants] for which [Defendants] ha[ve] no adequate remedy at law," and that Defendants are "entitled to injunctive relief for specific performance of any or all of the obligations . . . including the obligation to pay to [Defendants] the sum demanded" and to waive any defenses. (*Id.* at 3).

On May 3, 2021, WILCO declared RBPC to be in default of its contractual obligations and on May 12, 2021 issued a second notice of default. (Mot. Prelim. Inj., Dkt. 4, at 3). On June 2, 21, WILCO defaulted RBPC, terminated the contract, and made a claim against the performance bond. (*Id.*). Plaintiffs now claim entitlement, under the Indemnity Agreement, to collateralization and

reimbursement for any losses incurred on the performance bond. (*Id.*). On June 7, 2021, Patin Construction LLC ("Patin"), a subcontractor on the Project, filed suit against Plaintiffs and Defendants on the payment bond seeking $184,775.08 in damages. (*Id.* at 4). Defendants have filed a counterclaim for $250,000.00 and additional claims against Argonaut Insurance, Patin's performance bond carrier. (Resp., Dkt. 9, at 3). Plaintiffs have also received claims against the payment bond from other subcontractors. (Mot. Prelim. Inj., Dkt. 4, at 4). WILCO currently holds $641,985.97 in retainage from RBPC and its subcontractors which Defendants claim is accessible to Plaintiffs to complete the Project. (*Id.*).

Plaintiffs claim that the Indemnity Agreement requires Defendants to collateralize and reimburse them for all losses and expenses in connection with the payment bond. (Mot. Prelim. Inj., Dkt. 4, at 4). On June 25, 2021, Plaintiffs sent a demand letter to Defendants requesting that they post $1 million in collateral to indemnify Plaintiffs for present and future losses on the bonds, including legal expenses. (*Id.*). Defendants failed to provide the requested collateral. (*Id.*). Plaintiffs then filed this suit Court on June 28, 2021. (Compl., Dkt. 1). They bring claims for breach of the Indemnity Agreement, specific performance of the Defendant indemnitors' collateral obligations, specific performance of Defendant indemnitors' duty to furnish books and records, exoneration of liability, collateralization/quia timet, and common law indemnity. (*Id.* at 8–11).

On July 26, 2021, Plaintiffs filed the instant Motion. (Mot. Prelim. Inj., Dkt. 4). Plaintiffs seek from Defendants: (1) specific performance of the Indemnity Agreement by depositing cash collateral with Plaintiffs of a minimum of $1,000,000.00; (2) production of updated personal financial records, as provided in the Indemnity Agreement; and (3) a prohibition from transferring, conveying, selling, or otherwise disposing of their assets without Plaintiffs' prior written consent or approval. (*Id.* at 11). Defendants filed responsive briefing on September 3, 2021. (Resp., Dkt. 9). The parties engaged in mediation and attempted to come to an agreement as to payment but were

ultimately unsuccessful. (Prelim. Inj. Hr'g, Dkt. 18). The Court held a hearing on the Motion on March 18, 2022, at which it took evidence and heard arguments by the parties. (*Id.*).

## II. DISCUSSION

A preliminary injunction is an extraordinary remedy, and the decision to grant such relief is to be treated as the exception rather than the rule. *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The party seeking injunctive relief carries the burden of persuasion on all four requirements. *PCI Transp. Inc. v. W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005).

### A. *Likelihood of Success on the Merits*

To recover payment on an indemnity agreement, an "an indemnitee must establish actual liability" or "potential (rather than actual) liability . . . where either (1) [the indemnitee] tender[s] the defense of the action to the indemnitor, (2) the claim for indemnity is founded upon a judgment, or (3) the defendant's claim is based on a written contract of insurance or indemnification." *Terra Res., Inc. v. Lake Charles Dredging & Towing Inc.*, 695 F.2d 828, 831–32 (5th Cir. 1983) (citing *Wisconsin Barge Line, Inc. v. Barge Chem 300*, 546 F.2d 1125 (5th Cir. 1977); *Tankrederiet Gefion A/S v. Hyman-Michaels Co.*, 406 F.2d 1039 (6th Cir. 1969)). Here, Plaintiffs' claim is based on the Indemnity Agreement, which requires each named defendant to "exonerate, indemnify, hold harmless and keep [Plaintiffs] indemnified." (Indemnity Agreement, Dkt. 4-2, at 2). The Indemnity Agreement further required Defendants to make prompt payment upon an assertion of liability by Plaintiffs. (*Id.*; Mot. Prelim. Inj., Dkt. 4, at 2). Plaintiffs reasonably believe they will incur loss on their bonds, based on the

claims against them, and have demanded Defendants tender the agreed collateral. (*Id.* at 7). The Court therefore finds Plaintiffs are likely to succeed on their claim under the Indemnity Agreement.

Under Texas law, specific performance of a contract may be available if: "(1) the contract is reasonably certain, unambiguous, and based on valuable consideration; (2) the contract is fair . . . , void of misrepresentation, misapprehension, fraud, mistake, imposition, or surprise; (3) the parties are so situated that specific performance will not be harsh or oppressive; and (4) the party seeking specific performance [has] clean hands." *Liberty Mut. Ins. Co. v. Nat'l Pers. of Texas, Inc.*, No. CIV.A. 3:02-CV-1341-, 2004 WL 583531, at *2 (N.D. Tex. Mar. 24, 2004) (citing *Condovest Corp. v. John Street Builders, Inc.*, 662 S.W.2d 138, 140 (Tex. App.—Austin 1983, no writ)). "Courts have generally granted specific performance to enforce collateral security clauses based on the premise such remedy is required to protect the surety's bargain." *Id.* Here, the Court finds Plaintiffs are likely to meet their burden to establish specific performance is proper under this test. First, there is no claim, nor evidence, that would lead the Court to doubt the Indemnity Agreement is valid, fair, and clear. Nor is there any suggestion that Plaintiffs have acted with unclean hands. As to the oppressiveness of the contract, there is no doubt that payment of the collateral sought will be a substantial burden to Defendants, (Resp., Dkt. 4, at 5), but it is a burden they have willingly shouldered and so cannot be considered oppressive. Indeed, Defendants "do not fundamentally dispute [Plaintiffs'] indemnity rights," and instead oppose only "the extent of collateral demanded." (Resp., Dkt. 9, at 2). Thus, the Court finds Plaintiffs are likely to succeed in their claim for specific performance of their obligations under the Indemnity Agreement.

### B. Irreparable Harm

To establish irreparable harm, a party must demonstrate a "significant threat of injury from the impending action, that the injury is imminent, and that money damages would not fully repair the harm." *Humana, Inc. v. Avram A. Jacobson, M.D., P.A.*, 804 F.2d 1390, 1394 (5th Cir. 1986). An

5

injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured. *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011) ("[A] harm is irreparable where there is no adequate remedy at law, such as monetary damages."). Courts have long held that "a finding of irreparable harm is appropriate even where economic rights are involved when the nature of those rights makes establishment of the dollar value of the loss . . . especially difficult or speculative." *Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 810 n.1 (5th Cir. 1989) (quotation omitted); *Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 848 (5th Cir. 2004) ("[A] plaintiff can prove there is no adequate remedy at law where damages cannot be calculated.").

Defendants stipulated, in the Indemnity Agreement, that failure to indemnify would constitute irreparable harm. (Mot. Prelim. Inj., Dkt. 4, at 2). That evidence alone does not fulfill Plaintiffs' burden on this prong, as such stipulations are insufficient by themselves to support a finding of irreparable harm to support injunctive relief." *Hartford Fire Ins. Co. v. 3i Constr., LLC*, No. 3:16-CV-00992-M, 2017 U.S. Dist. WL 3209522, at *2 (N.D. Tex. May 18, 2017). However, the Court finds that Plaintiffs have sufficiently supported their assertion that they will suffer irreparable harm absent an injunction here. *See id.*

The central harm here is to Plaintiffs' "duly negotiated contractual rights to indemnity and collateralization." (Mot. Prelim. Inj., Dkt. 4, at 7). This loss is imminent and permanent as, even if Plaintiffs are eventually reimbursed, they will be deprived of their bargained for right to receive "collateral immediately on demand"—the immediate exoneration of the balance owed to them. (*Id.* at 9). *See 3i Constr.*, 2017 U.S. Dist. WL 3209522, at *4 (quoting *Travelers Casualty & Surety Co. v. Ockerlund*, No. 04 C 3963, 2004 U.S. Dist. WL 1794915, at *5 (N.D. Ill. Aug. 6, 2004) (mem. op.)) ("[A]ny judgment for money damages without 'according [the surety] the relief of specific performance pursuant to the . . . indemnity agreement is not an adequate remedy and would

irreparably harm [the surety] by depriving it of prejudgment relief to which it is collaterally entitled.'"). Other courts have found injunctive relief appropriate to enforce the rights of sureties in similar contexts. *See, e.g.*, *Wingsco Energy One v. Vanguard Groups Res. 1984, Inc.*, No. CIV. A. H-86-452, 1989 WL 223756, at *1 (S.D. Tex. Nov. 15, 1989); *Northwestern Nat'l Ins. Co. of Milwaukee, Wisconsin v. Barney,* No. C86-3936, 1988 U.S. Dist. WL 215411, at *5 (N.D. Ohio Nov. 23, 1988). Moreover, there are grave doubts here as to Defendants' financial ability ever to satisfy their obligations under the Indemnity Agreement, particularly if their funds are further diverted to fulfill other pending obligations. Thus, absent an injunction here, it is likely that Plaintiffs will find themselves without a remedy to protect their contract rights. (*See* Mot. Prelim. Inj., Dkt. 4, at 9). As such the Court finds that Plaintiffs have sufficiently demonstrated an imminent risk of irreparable harm.

## C. Balance of Equities

Plaintiffs must also establish that their irreparable harm is greater than the hardship that the preliminary injunction would cause. *Sirius Computer Sols.*, 138 F. Supp. 3d at 842. Plaintiffs claim that its assertions of irreparable harm demonstrate that the equities fall in their favor, whereas Defendants would only be required to perform as they voluntarily agreed to in entering the Indemnity Agreement. (Mot. Prelim. Inj., Dkt. 4, at 9, citing *Int'l Fidelity Ins. Co. v. Anchor Environmental, Inc.*, No. 07-04750, 2008 U.S. Dist. WL 1931004, at *7 (E.D. Penn. May 1, 2008); *3i Constr.*, 2017 U.S. Dist. WL 3209522, at *3-4). By contrast, Defendants focus their entire opposition on this element, claiming that the burden they will suffer from an injunction far outweighs any harm to Plaintiffs. (Resp., Dkt. 9, at 4). Defendants assert that if they "are required to post $1,000,000.00 in collateral that strain will effectively prevent [RBPC] from operating its business." (Resp., Dkt. 9, at 4).[2] They claim that the sum requested as collateral is "an excessive amount" which will "only

---

[2] According to the parties' presentations at the hearing, since the briefs on this motion were filed, Defendants have ceased operation altogether due to financial difficulties. (Prelim. Inj. Hr'g, Dkt. 18).

7

compound the issues at hand." (Resp., Dkt. 9, at 5). They note that they have offered to post more than $400,000 in collateral, which they claim "would substantially protect [Plaintiffs] from any financial risk." (*Id.*). WILCO also possesses $641,985.97 in retainage from RBPC, which Defendants assert Plaintiffs can access to fulfill their contract rights. (*Id.* at 6). Furthermore, RBPC "is not a large operation, and . . . is owned by two individuals. Thus, any required collateral hold will affect those individuals." (*Id.* at 5). While the Court is sympathetic to Defendants' situation, and does not wish to minimize the financial burdens they face, the infringement of the surety's rights represent a harm that cannot be denied. Thus, even with the significant harm to Defendants, this factor alone cannot swing the balance in their favor.

### D. Public Interest

Finally, the Court must address the interests of the public in an injunction at this stage of the proceedings. "The focus of the district court's public interest analysis should be whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Conceal City, LLC v. Looper Law Enforcement, LLC*, 2011 WL 5557421 at *8 (N.D. Tex. 2011). Here, Plaintiffs point to the public interest "in seeing that contractual agreements between parties are upheld and in the continued solvency of surety companies for the public benefit." (Mot. Prelim. Inj., Dkt. 4, at 10, citing *Developers Sur. & Indem. Co. v. Electric Service & Repair, Inc.*, No. 09-21678-CIV, 2009 U.S. Dist. WL 3831437, at *2 (S.D. Fla. Nov. 16, 2009). The Court agrees that the public interest is served by ensuring the enforcement of "the plain language of a binding surety indemnification agreement." *Int'l Fid. Ins. Co. v. Anchor Env't, Inc.*, No. CIV.A. 07-04750, 2008 WL 1931004, at *7 (E.D. Pa. May 1, 2008). The public has an interest in the availability of sureties to support public construction projects which, in turn, requires that parties be able to rely on the enforcement contracts delineating such surety arrangements. Therefore, the Court finds that the public interest weighs in favor of granting a preliminary injunction here.

Having found that Plaintiffs have fulfilled their burden to establish each of the required elements, the Court finds that Plaintiffs are entitled to a preliminary injunction as requested.

## III. CONCLUSION

This Order constitutes the Court's findings of fact and conclusions of law. For the reasons discussed above, **IT IS ORDERED** that:

1. Plaintiffs' Application for Preliminary Injunction, (Dkt. 4), is **GRANTED**.

2. **IT IS FURTHER ORDERED** that Defendants shall specifically perform their obligation to deposit cash collateral with Plaintiffs in the minimum amount of $1,000,000.00 to cover Plaintiffs' existing liability.

3. **IT IS FURTHER ORDERED** that Defendants shall refrain from transferring, conveying, selling, or otherwise disposing of any of their assets without prior written consent or approval of Plaintiffs.

4. **IT IS FINALLY ORDERED** that Defendants shall comply with this order by depositing collateral within **14 days** of this order, or else file with this Court an affidavit of inability to pay. Any request for relief not granted is denied.[3]

**SIGNED** on March 24, 2022.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

---

[3] Federal Rule of Civil Procedure 65(c) requires a court to order "security in an amount that the court considers proper" upon entry of a preliminary injunction. Under Fifth Circuit law, "[t]he amount of security required is a matter for the discretion of the trial court; it may elect to require no security at all. *Corrigan Dispatch Co. v. Casa Guzman*, S. A., 569 F.2d 300, 303 (5th Cir. 1978). *See EOG Res. Inc. v. Beach*, 54 F. App'x 592, 2002 WL 31730385, at *1 n.2 (5th Cir. 2002) ("In this circuit, . . . courts have the discretion to issue injunctions without security."); *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) ("In holding that the amount of security required pursuant to Rule 65(c) is a matter for the discretion of the trial court, we have ruled that the court may elect to require no security at all.") (quotations omitted). As such, the Court finds that based on the strength of Plaintiffs' case, it is unnecessary to order bond at this time. *See Alpert v. Riley*, No. CIV.A. H-04-CV-3774, 2010 WL 1254286, at *3 (S.D. Tex. Mar. 29, 2010).